Johnson, J.
The jurisdiction exercised by the public utilities commission in this case was pursuant to Section 614-21 et seq., General Code. This jurisdiction was upheld in Cleveland Telephone Co. v. Cleveland, 98 Ohio St., 358. I did not concur in that decision, but when it was made it became the duty of the commission to exercise the jurisdiction and it is equally the duty of this court to examine the proceedings of the commission when attacked by petition in error and to make such order in the case as it finds to be proper under the revisory jurisdiction conferred upon it by the statute.
The city sets out in the petition in error a number of reasons for which it contends that the order complained of is unlawful and unreasonable. Substantially these are comprised in the claim that the commission erred in not modifying the order whereby ' it had established the measured service system and in not restoring the flat rate service to the subscribers of the company, and erred in the determination of the value of the service which the company rendered. In this connection it is also contended that the commission erred in not disregarding certain contracts which the company had with the American Telephone & Telegraph Company for services rendered to the Cleveland company in connection with its service to the public. Considerable testimony was taken by the parties, including experts employed by each.
*344 There is a wide divergence of opinion disclosed in the testimony as to the merits and efficiency of what has been termed the “measured system.” The plan attempts to provide a system by which the user pays for the calls that he makes, instead of paying a flat sum per month. By the flat rate system he pays a certain sum per month without reference to the number of calls he may make; which are unlimited. By the measured service plan his charges are based upon the use made by him. Those favoring the plan contend that in this way large users pay for what they get and a small user pays for no more than he gets, while under the flat rate service the reverse is true. The city contends that the system is much complicated and still very imperfect and unsatisfactory. It is described in great detail by the witnesses and by counsel, who insist that in the present state of the development of the plan there is much opportunity for error, and for fraud, particularly on party lines, inasmuch, as there is no opportunity for the subscriber to keep track of the charges that are being made against him by the company; that in many cases where a wrong number or call is given to the operator, or in which the operator herself makes a mistake in entering the charge, the subscriber may be erroneously charged.
The testimony for the city tended to show that subscribers were compelled to wait for long periods of time. In its finding on May 12, 1920, the commission says: “There can be no disputing the fact that at times the service has been bad, but the defect was in spite of and not because of the measured service. The records show that the measured ser *345 vice has eliminated thousands of useless calls daily, ‘and to that extent lessened the abuse incident to unlimited service. It also results in more equitably distributing the burden of maintaining the plant, making the large user pay in proportion to his use. Recent investigation by the Commission’s experts shows that there is a gradual improvement of the service, and we shall confidently expect and insist upon a still further improvement in the near future.”
The proceedings that followed the complaint filed by the city are authorized by Section 614-21 et seq., General Code. Section 614-23 contains the provision that “Whenever the commission shall be of the opinion, after hearing, that any rate, fare, charge, toll, rental, schedule, classification or service, * * * is, or will be, unjust, unreason-, able, unjustly discriminatory or unjustly preferential or in violation of law, or the service inadequate, or that the maximum rates, charges, tolls or rentals chargeable by any such public utility are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable, the commission shall, with due regard among other things, to the value of all of the property of the public utility actually used and useful for the convenience of the public, * * * fix and determine the just and reasonable rate, fare, charge, toll, rental or service to be thereafter rendered.”
It will be observed that tin's provision imposes upon the commission the duty of fixing not only the just and reasonable rate, but also the “service to be thereafter rendered.”
*346 The public utilities commission is an administrative governmental agency with regulatory powers, and it is well settled by this court that it will not substitute its judgment for that of an administrative body as to matters within such body’s province. Before the court will interfere with an order of the public utilities commission it must appear from a consideration of the record that the action of the commission was unlawful or unreasonable. Hocking Valley Ry. Co. v. Public Utilities Commission, 92 Ohio St., 362; Lima Telephone & Telegraph Co. v. Public Utilities Commission, 98 Ohio St., 110, and Hocking Valley Ry. Co. v. Public Utilities Commission, 100 Ohio St., 321, 324.
As already indicated there is a difference of opinion as to the efficiency of the measured service plan. It may be said that it is still in its experimental stage. The order of the commission for its installment was made April 4, 1918, when we were in the midst of the world war. Everyone knows the confusion that resulted from our entrance into the war, in all the industries and utilities of the country. During part of the time the telephone systems of the country were in the control of the government. The progress of the city of Cleveland itself within the last fifteen years has been astonishing. It has become one of the most important industrial centers in the country. It is natural that much confusion would result from this situation, and the difficulties to be encountered in the effort to meet the demands of such conditions are manifest.
*347 The commission in the consideration of the evidence before it and of what it saw on its visits to Cleveland was convinced that the service was in a process of gradual but sure improvement.
We think it is manifest from the record that the commission proceeded in this case with a conscientious desire to do its full duty, and looking at the circumstances under which the test of the new system has. been made we do not feel justified in holding that the order of the commission with reference to the service was unreasonable or unlawful. It may be that when we have come nearer to normal conditions, and a better opportunity is afforded to determine the real merits of the system, it will be found that it lacks the essentials of securing proper and impartial service for the subscribers and of guaranteeing to each that only accurate charges will be made against him. If so, the jurisdiction of the commission may then be invoked to fix a more adequate and reasonable service.
It is also contended by the city that the commission erred in not disregarding certain contracts which the Cleveland company had with the American Telephone & Telegraph Company for services rendered to the Cleveland company in connection with its service to the public. Four and a half per cent, of its gross earnings were paid by the Cleveland company to the American company. It is insisted that no proof was offered as to the cost of the services rendered by the American company, that it was illegal for the Cleveland company and the American company to fix an arbitrary sum to be paid to the latter out of the gross earnings, in *348 such way. that this arbitrary sum should be used as one of the elements in the making up of the aggregate sum upon which the public were compelled to pay income to the Cleveland company.
It is contended that the American company owned practically all of the stock of the Cleveland company and some subsidiary companies which furnished part of the service and that the fiction of these different corporations should be disregarded.
It appears that the Cleveland company had the benefit of certain services by the American company, and the use of certain instruments owned by the American company, for which the four and a half per cent, was paid under the contract. When the property of a public utility corporation is devoted to the public use it must be used by the company in the performance of its duty to the public, and in this behalf is subject to governmental supervision both as to its use and the compensation to be paid for it. (Atlantic Coast Line Rd. Co. v. N. Carolina Corporation Comm., 206 U. S., 1; Munn v. Illinois, 94 U. S., 113; Lima Telephone & Telegraph Co. v. Public Utilities Commission, supra, 110, 121.) But the Cleveland company had the right to procure the assistance of others in the performance of its service to the public.
Concerning a similar question as to railroads it was said in Morgan Run Ry. Co. v. Public Utilities Commission, 98 Ohio St., 218, at page 227: “While a railroad company’s property must be used by the company in the performance of its duty to the public, and in this behalf is subject to governmental supervision, beyond this it must be held to *349 have the right to control its own affairs and to manage its business in its own way so long as it does not injuriously affect the public or exceed its charter powers. Matters of purely business policy must be left to the decision of the company, and except in unusual circumstances, the question whether it shall extend its lines to points not before reached, or engage in any additional enterprise, is one to be determined by its directors.”
So here the Cleveland company had the right to contract for the assistance of the American company. However, it is equally clear that in the making of the contract it had no right to agree to pay the American company an exorbitant sum and use that exorbitant sum in the making up of the aggregate cost of service which was to serve as the basis upon which the public would be compelled to pay. Now, in this case the city contends that the old schedule would be adequate but for the fact that the contract amount takes too much from the treasury of The Cleveland Telephone Company. On the other hand the company contends that the division of receipts is fair and reasonable, considering the service performed by each, and that the American company gives very substantial aid to the local company. But the commission found that the question was not important in this case, for the reason that the commission’s own experts estimated that the rates allowed, after deducting operating expenses and depreciation, will return less than four per cent, on the investment, and that anj^ reductions which might be made in the contract would not affect the *350 matter to the extent of showing that the present rate is excessive.
For these reasons the order of the commission will be affirmed.

Order affirmed.

Marshall, C. J., Hough, Robinson, Jones and Matthias JJ., concur.